Good morning, everyone. We're here today for oral arguments. We're going to begin with case numbers 22-1902 and 23-2377. United States of America v. Narvett. Ms. Christensen, we'll recognize you first. Thank you, Your Honor. May it please the court, counsel. My name is Joanna Christensen and I represent the appellant, Robert Narvett. The fact that there's an appeal waiver in a written plea agreement is not enough to advise the defendant of its consequences. Rule 11 requires the district court to advise the defendant of the appeal waiver and determine whether he understands it. Without a change of plea hearing transcript, as in this case, it's difficult, if not impossible, to determine whether the judge complied with Rule 11. Was the loop ever closed, Ms. Christensen, on the video? There's the existence of a video, but it never got transcribed? Or what's the... No, there's no video. So this was when the court was still having Zoom hearings under the CARES Act, and they were all on Zoom. My understanding is that record was never hit. The button was never pushed. So when it came time for the appeal, trial counsel tried to order it, and then the clerk's office said, we don't have it. Court reporter says, don't have it. They looked, and there was no backup file, and it just simply could not be produced. So in that vein, the government and I attempted to reconstruct it under Rule 10C, and we got only so far. We got a good portion of it where we can assume occurred because the government's checklist and the court's checklist come together on many points. But there are differences between those, and the one here is that the court's checklist doesn't contain the indication that it went over the appeal waiver. So the government's checklist does, so that is some evidence that the court did, although mistakes happen, as we all know, for all of us. And the record button wasn't pushed, so it happens. In addition, defense counsel didn't have any specific recollection, and Mr. Narvette himself didn't have any specific recollection. Those of us who do this every day, it becomes routine. For a defendant like Mr. Narvette, it's not routine. But it was some time ago because of the way this case transpired. So if the existence of an appeal waiver is enough, without the Rule 11 transcript, why do we have change of plea hearings in the first place? We could just have them sign a waiver. Their attorney says, yeah, I went over it, which is usually sufficient, but not always. The Rule 11 says specifically the court must determine whether the defendant understands the appeal waiver. Ms. Christensen, you're not arguing, at least I take away from your brief, but you can correct me. You're not arguing it's a structural error, right? No. There's really not case law to support that it's a per se reversible. I think there might be cases in which that was arguable. Perhaps if there was no contemporaneous evidence at all about what occurred, I might be arguing that. But there's some. So no, I'm arguing that it's prejudice and following, really, the DC Circus decision in Johnson about that prejudice. Because it seems as if most courts follow that type of analysis for this. And this court, although it's been a time since there was no transcript, this court has done that in cases. I believe in the 90s was the last time the court really addressed it. Yeah. When I was looking at this, what stuck out at me is that, you don't have to answer this, but Mr. Narvette was probably surprised by the sentence. And not so much that he wants to walk back the plea, but would probably like to challenge the sentence. Because it's not quite, but almost double the advisory range, or double the low end that way. But it does seem to me as well, we'll see what the government says, that the plea was bargained for because they dropped that aggravated identity theft charge, which would have brought the consecutive mandatory minimum with it. Sure. The plea was absolutely bargained for. And I think what happened informs the prejudice analysis here. Mr. Narvette has actually told me it is fine to tell this court he absolutely wants to withdraw his plea at this point. And there are factors in that. Yes, he got a double guideline sentence, or nearly double. But it also- And not just challenge the sentence? Well, the problem is- Go to trial on the whole indictment? Go to trial on the whole indictment is his choice. The mandatory minimum consecutive is a factor, but it's two years. And since he got something like 80 months higher than the guidelines, that doesn't really play out as much of a difference in his mind. It did drop from 11 counts to two counts, correct? Sure. In essence, that makes a difference only in his special assessment, and of course the two-year mandatory minimum. But other than that, the special assessment, because he pled guilty to one count, but all of the conduct comes in under relevant conduct. So he could have pled guilty to all of them and received the same sentencing guideline calculation. So going on to prejudice from the transcript, of course, those factors are, it's difficult for appellate counsel to evaluate, which is bottom line. This court can't evaluate whether this was a knowing involuntary guilty plea, for the most part. But the very specific portion is that appeal waiver, which is key. Everything else in the record doesn't point to the fact that Mr. Narvette understood the consequences of that appeal waiver. And you see that while defense counsel signed that he had explained it to him, it also included the rest of the plea agreement, which defense counsel kind of questioned. And it makes the record wonder as if defense counsel explained everything correctly. So when defense counsel objects to the government's position on abusive position of trust, or the restitution calculation, while the government didn't breach the plea agreement, I'm not arguing that, defense counsel argued that the government did so. And that may have been how defense counsel informed Mr. Narvette to understand this plea agreement. I think that's indication that defense counsel did not, perhaps, explain the appeal waiver as fully as he could have. So I did want to just touch on one thing the government argues is that Mr. Narvette has not provided an affidavit to this court. And as argued in my reply brief, that's simply not possible. It was suggested in Sura by the dissent. But as this court is aware, we can't add evidence to the record on appeal. Rule 10C and reconstructing the transcript is an exception to that. But there's no exception that will allow Mr. Narvette to do that. Unless the court has further questions, I'm into my rebuttal time. So I will reserve. Very good. Thank you. Thank you. Ms. Stewart, we'll hear from you next. Good morning, and may it please the court. The appellant bears the burden of showing not only that an error occurred, but also that the error was plain. He cannot meet either burden. Although the weight of the evidence suggests that no error occurred at the Rule 11 hearing, this court need not undertake that inquiry. Instead, this court can presume the error below, and still affirm because that error was not plain. In other words, the defendant here cannot show a reasonable probability that at the time he entered his plea, he would not have pleaded guilty had the advisement been given. That's the inquiry on plain error. Indeed, the most the defendant in this case says is that he doesn't specifically remember the advisement. He can't even say that it wasn't given, just that he doesn't remember it. And all of the evidence shows that he would have pleaded guilty even if the Rule 11 colloquy had been accurate. What about your thoughts, Ms. Stewart, on the third element, whether or not any error affected substantial rights? That element requires showing that he would have acted differently. Those are the substantial rights. That's how the court has analyzed those factors. And in this case, the weight of the evidence shows that nothing would have changed had the Rule 11 colloquy proceeded correctly. And the way we know that, Your Honors, is the overwhelming nature of the evidence, which even Mr. Narvette said was overwhelming to him as he reviewed the discovery. He gave the court two reasons for why he pleaded guilty. One was, after reviewing the evidence, he found it to be absolutely overwhelming. And the second reason he gave the court is that he did not want to put the victims through a trial. And indeed, his own counsel said in his sentencing submissions that Mr. Narvette never wanted to go to trial and never wanted to put his victims through a trial. This is Mr. LaBelle? Yes. And so it's both the defendant and the defendant's lawyer who are representing to the court contemporaneously that this was never a trial case. That's important because that's the contemporaneous evidence of what the defendant would have done. And as to Mr. LaBelle's explanations or not of the plea agreement itself, the issues that Mr. Narvette contested or that Mr. Narvette's counsel contested in terms of the plea bargaining negotiations, even after the court had ruled against him on those issues, Mr. Narvette reaffirmed his desire to continue to plead guilty. That's also contemporaneous evidence that he always intended to, and at this time intended to, plead guilty. It's only now that he's offering post hoc rationalizations for why he wants to withdraw the plea. And those are understandable after the fact because he's unhappy with his sentence, and he's unhappy with the way the sentencing went for him. But those are post hoc, and this court has repeatedly and consistently held that you cannot, in a moment later in time, use post hoc rationalizations to undo a plea agreement and undo a plea bargaining, that that doesn't play into the plain error analysis. Did the PSR here observe that there was a waiver? Yes, it did.  Yes, it did. Okay. And then we, and then at the very end of sentencing, I remember this, Judge Griesbach, yeah, Judge Griesbach observed when he was informing Mr. Narvette of his right to appeal, I think his memory was jogged, that there was a plea waiver, or I mean, I'm sorry, an appellate waiver, and he observed that. And so, if the defendant was unaware that there was an appellate waiver, or that he had waived, there are multiple occasions throughout the case where you think he, especially given his background, education, experience, that he would have said, hold on, what are you talking about? That's exactly right. Appellate waiver. That's exactly right. The PSR went through in great detail about the appellate waiver. I mean, the plea agreement is very clear, and this court has held this exact language in Glover was sufficient, given the five-factor test in Pollack, but also the PSR went through it, and he confirmed at sentencing, on the record, in a transcript, that he went over the PSR with his lawyer, and so he would have gone over that provision. Then at sentencing itself, there was a discussion about the things he objected to. No mention of this appellate waiver being a surprise, and even the things he objected to, which raised his guidelines, he ultimately reaffirmed his decision that he did not want to withdraw the plea, that he always intended to plead guilty. That's significant contemporaneous evidence. And then even after the sentence was issued, and even at that point, when the judge reaffirmed the existence of an appellate waiver, Mr. Narvette didn't say, wait, hold on a minute, I'm unhappy with the sentence, I'm unhappy with the way you've ruled on these issues, and lo and behold, now I have an appellate waiver, I'm surprised by that, stop, pause, object, I want to take it back. None of that happened. That's critical evidence in terms of what was happening at the time in Mr. Narvette's mind, and evidence of what he knew and intended when he bargained for this plea. And he got what he bargained for, he's just unhappy with the sentence. That is not a sufficient reason to find plain error here or to find that he has met his burden, and the burden is on him to show that he didn't know about the appellate waiver, that he didn't understand it. And frankly, at no point in any of the briefing or in counsel's argument does Mr. Narvette say that, and he could have in the reconstruction appendix in 106. He doesn't say in there that he didn't understand the appellate waiver, he doesn't say that he didn't know about it. The most he says is that he doesn't remember being given the advisement, and in his appeal briefs when he argues that he would not have pled guilty, the most he says on that point is literally a heading that says he would not have pled guilty absent the advisement. But he doesn't explain why or how or anything to support that claim, and in fact, most of the argument under that heading is about whether he could have submitted an affidavit, and frankly, that's somewhat beside the point ultimately, except that it goes to the point of whether there is evidence that he would not have pled guilty absent the waiver. And the other part of that argument under that heading, that he would not have pled guilty, talks about these other disagreements that were raised and that he affirmed his decision to plead guilty. But other than offering this disagreement or unhappiness with the ultimate sentence he received, Mr. Narvette does not proceed to explain to this court at all what would have been different for him had he been advised of the appellate waiver at the time. Certainly now, sitting in this courtroom or sitting in prison in 2024, one can understand the post hoc rationalization for why he regrets bargaining for dropping the two-year mandatory minimum charge and pleading guilty, but a post hoc rationalization is not the same as explaining to this court that he did not knowingly and voluntarily enter the bargain and get what he bargained for, and he did, and his guidelines would not have been the same, contrary to counsel's argument, had he not gotten this bargain, because they would have been 24 months higher. It would have been a consecutive 24 months. So he'd be looking at the high end, 97 plus 24. And the additional counts would have made a difference, and he would have been facing more time. So he did get what he bargained for, and that bargain made sense for him at the time. And that's what this court's jurisprudence tells us to look at, is the contemporaneous evidence of what was in the defendant's mind at the time of the change of plea colony. And it's not the case that there isn't enough evidence for this court to look at, because there is the checklists of the other advisements that were given, there is the plea agreement, and this court has held in blubber that even when there is a presumed error or an obvious error, that it's still sufficient for this court to look at the other evidence contemporaneously in the record to determine whether the plain error standard is met. That standard puts the burden on the appellant to show that he would not have pled guilty. And ultimately, that's the question. Mr. Narvette is unhappy with the results of his sentence. That alone, that post hoc rationalization, is not enough to show plain error. He does not remember whether the court advised him, and much evidence suggests that he did. Even if it didn't, it doesn't explain how or why the advisement would have caused him to change his mind. It wouldn't have changed anything. Narvette is a sophisticated, educated person who managed to evade law enforcement for a He signed a clear, unambiguous agreement with an appellate waiver. He was facing a mountain of irrefutable evidence, and he said he always wanted to avoid a trial. And then he never moved to withdraw his plea. That contemporaneous evidence bars his claim now, post hoc, to change his mind. Unless the court has any questions, we'll see the rest of the time. Thank you, Ms. Stewart. Ms. Christensen, we'll go to you now for rebuttal. The reliance on the PSR mention of the appeal waiver is a circular argument. Because what happens when something's in the PSR and a defendant questions it, is he questions it and asks his attorney. And his attorney explains it. That's exactly what we know happened anyway. So we don't know. The government is assuming that Mr. Narvette was fine with it, because he didn't object. Most likely, as he talked to his attorney, his attorney explained it in the same way he did for the plea agreement. And we still don't know whether the court determined whether Mr. Narvette understood that appeal waiver. And when we talk about what the district court said at sentencing, it's not an advisement. It says you have the right to appeal your conviction or sentence. I know there's a waiver here in the plea agreement, but that has exceptions. So keep in mind, you have the right to appeal any conviction. That's ambiguous at best. I understand the government's very concerned about post hoc statements in this case. The thing is, is that when this argument is made, it's always on the record. It's always based on the record, and we cannot add to it. So it is necessarily based on what happens in the record, and that's what the argument is here. It's not post hoc, any more than arguing that it being in the PSR is post hoc, because we don't know what happened. So the main problem is, is that essentially this court, if affirmed, would say that it's okay if we don't have Rule 11 hearings. It's okay if we don't review Rule 11 hearings. As long as they've signed something and they had an experienced attorney, then everything is good. That eviscerates Rule 11, which requires the court to make these advisements and determine if the defendant understands. That did not happen in this case, and this court should reverse and remand. Unless the court has further questions, I will ask the court to do just that. Thank you, Ms. Christensen. Thank you, Ms. Stewart. The case will be taken under advisement.